## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
915 15th Street, NW – 2nd floor
Washington, DC 20005,

     Plaintiffs,

  v.           No. 1:23-cv-_____

FEDERAL BUREAU OF PRISONS
320 First Street, NW
Washington, DC 20535,

     Defendant.

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
### (Freedom of Information Act)

1.  Plaintiffs American Civil Liberties Union, American Civil Liberties Union

Foundation, and American Civil Liberties Union of the District of Columbia (together, the

"ACLU"), bring this action against the Federal Bureau of Prisons ("BOP") under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§

2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the

requirements of FOIA to immediately release improperly withheld agency records about the

placement of people in home confinement in accordance with the Coronavirus Aid, Relief, and

Economic Security Act ("CARES Act") and the administration of these placements.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The

Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and authority to issue a

declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has personal

jurisdiction over the parties. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28

U.S.C. § 1391(e).

## PARTIES

3.  The American Civil Liberties Union is a nationwide non-profit organization with

approximately two million members dedicated to protecting the civil liberties and civil rights of

all Americans, including the rights of people who are incarcerated. The American Civil Liberties

Union is also committed to principles of transparency and accountability in government, and

seeks to ensure that the American public is informed about the conduct of its government in

matters that affect civil liberties and civil rights. Obtaining information about governmental

activity, analyzing that information, and widely publishing and disseminating it to the press and

the public is a critical and substantial component of the ACLU's work and one of its primary

activities.

4.  Plaintiff American Civil Liberties Union Foundation is an affiliated non-profit

organization that shares the goals of the American Civil Liberties Union and engages in litigation

and public education to support those goals.

5. Plaintiff American Civil Liberties Union of the District of Columbia is the

Washington, DC, affiliate of the American Civil Liberties Union.

6.   Defendant Federal Bureau of Prisons is an agency of the United States Government within the meaning of the Freedom of Information Act. It has possession, custody, and control of the records that Plaintiffs seek in this action.

## FACTS

### Background

7.   Prior to the COVID-19 pandemic, under 18 U.S.C. §3624(c)(2), BOP had authority to place incarcerated people in home confinement "for the shorter of [the last] 10 percent of the term of imprisonment of that prisoner or 6 months."  In March 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded BOP's authority to place people on home confinement for longer periods of time so that BOP could reduce the federal prison population and the spread of COVID-19:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Sec. 12003(b)(2), 134 Stat. 516, 18 U.S.C. § 3621 notes. "[T]he term 'covered emergency period' means the period beginning on the date on which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19) and ending on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act, Sec. 12003(a)(2).

8.   On March, 2020, Attorney General William Barr ordered BOP to transfer certain incarcerated people to home confinement to decrease health risks, recognizing home

confinement as "[o]ne of BOP's tools to manage the prison population and keep inmates safe."[1] Barr described home confinement decisions as "granting an[] inmate discretionary release"[2] and explained that incarcerated people who meet certain criteria are considered "appropriate candidates for home confinement rather than continued detention" at BOP prisons.[3] BOP began placing people categorized as non-violent on home confinement, mainly those who were elderly or otherwise especially vulnerable to COVID-19.[4] In June 2020, the BOP Director and Medical Director testified in the Senate that people being moved to home confinement under the CARES Act would be on home confinement "for service of the remainder of their sentences."[5]

9. Despite BOP's representations that people released to home confinement pursuant to the CARES Act would stay at home for the remainder of their sentences, the DOJ Office of Legal Counsel ("OLC") issued a Memorandum Opinion in the last days of the Trump Administration concluding that, once the President lifts the emergency declaration, BOP *must*

---

[1] The Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf

[2] *Id*. at 2.

[3] The Attorney General, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 at 2 (Apr. 3, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf

[4] *See* Federal Bureau of Prisons, Memorandum for Chief Executive Officers re: Home Confinement (April 13, 2021), available at https://www.fd.org/sites/default/files/covid19/2021.4.13_-_bop_home_confinement_cares_memo.pdf (stating that to be eligible for home confinement under the CARES Act, BOP must verify that a person's "current or a prior offense is not violent, a sex offense, or terrorism-related.").

[5] Dep't of Justice, Statement of Michael D. Carvajal, Director, and Dr. Jeffrey Allen, Medical Director, Federal Bureau of Prisons, Before the U.S. Senate Committee on the Judiciary (Carvajal and Allen Statement) at 6 (June 2, 2020), available at https://www.judiciary.senate.gov/imo/media/doc/Carvajal-Allen%20Joint%20Testimony.pdf

reincarcerate people who were moved to home confinement under the CARES Act and have more than the standard home confinement term left on their sentences.[6]

10. When it was reported that OLC—under President Biden—would not rescind or reconsider its decision,[7] significant public outcry ensued.[8]  In September 2021 President Biden directed his administration to collect the information needed to consider granting clemency to a subset of the people who would be subject to reincarceration based on OLC's memorandum.[9]

11. On December 21, 2021, OLC published a new memorandum on the same issue, this time concluding that BOP is not required to reincarcerate everyone who was put on home confinement under CARES and has more than the standard home confinement term left on their sentences when the national emergency ends.[10]

---

[6] Dep't of Justice, Home Confinement of Federal Prisoners After the COVID-19 Emergency (January 15, 2021), available at https://www.justice.gov/olc/file/1355886/download.

[7] *See* Charlie Savage and Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, N.Y. Times (July 19, 2021), available at https://www.nytimes.com/2021/07/19/us/politics/biden-prisoners-covid.html

[8] *See e.g., Unless Biden intervenes, people will needlessly be sent back to prison*, Editorial Board, Washington Post (July 25, 2021), available at https://www.washingtonpost.com/opinions/2021/07/25/unless-mr-biden-intervenes-people-will-needlessly-be-sent-back-prison//; Dan King, *Biden Must Act to Ensure Nonviolent Offenders Aren't Sent Back to Prison*, The Bulwark (August 19, 2021), available at https://www.thebulwark.com/biden-must-act-to-ensure-nonviolent-offenders-arent-sent-back-to-prison//; Democracy Forward et al., *Letter to the Office of Legal Counsel and Deputy Attorney General*, (February 18, 2021), available at https://democracyforward.org/wp-content/uploads/2021/08/Letter-Seeking-Reconsideration-of-OLC-Home-Confinement-Memo-8.4.21.pdf; Kristine Phillips, *ACLU, NAACP among those pressing Biden to grant clemency to inmates sent home during COVID-19*, USA Today (July 19, 2021), available at https://www.usatoday.com/story/news/politics/2021/07/19/biden-pressed-grant-clemencyinmates-sent-home-during-covid/7980882002/

[9] Sam Stein, *Biden starts clemency process for inmates released due to Covid conditions*, Politico (September 13, 2021), available at https://www.politico.com/news/2021/09/13/biden-clemency-covid-inmates-511658

[10] Dep't of Justice, Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency (December 21, 2021), available at https://www.justice.gov/olc/file/1457926/download

12. President Biden recently indicated that he will end the COVID-19 national emergency declaration on May 11, 2023.[11] Thirty days after that, BOP will lose its authorization to make new CARES Act home confinement placements. And according to the 2021 OLC memorandum, BOP will have discretion to reincarcerate people who, as of June 10, 2023, have more than six months remaining on their sentence.

13. On April 4, 2023, DOJ published a final rule that purports to indicate how BOP will exercise its discretion to reincarcerate people who have more than six months remaining on their sentence as of June 10, 2023. 88 FR 19830.[12]  In fact, this rule provides very little information about how BOP will exercise its discretion. The rule indicates that more information is forthcoming: "After publication of this final rule, the Department and the Bureau will work together to develop guidance to explain objective criteria the Bureau will use to make individualized determinations as to whether any inmate placed in home confinement under the CARES Act should be returned to secure custody." 88 FR at 19832.

14. Thousands of people are currently on home confinement pursuant to the CARES Act.[13] It is unknown how many of these people will have more than six months remaining on their sentence as of June 10, 2023, and therefore unknown how many will be at risk of

---

[11] The White House, Notice on the Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic (Feb. 10, 2023), available at https://www.whitehouse.gov/briefing-room/presidential-actions/2023/02/10/notice-on-the-continuation-of-the-national-emergency-concerning-the-coronavirus-disease-2019-covid-19-pandemic-3/

[12] Available at https://www.federalregister.gov/documents/2023/04/04/2023-07063/office-of-the-attorney-general-home-confinement-under-the-coronavirus-aid-relief-and-economic

[13] Id. at 19831 ("as of January 23, 2023…3,434" people "were placed in home confinement pursuant to the CARES Act.").

reincarceration. On April 28, 2023, President Biden granted sentence commutations to 31 people, at least some of whom are reportedly on home confinement.[14]

15. According to DOJ, most people placed in home confinement pursuant to the CARES Act are successfully reintegrating into society: "Violations of the conditions of home confinement requiring return have been rare during the pandemic emergency, however, and very few inmates placed in home confinement under the CARES Act have committed new crimes." 87 FR at 36788.[15]

### Plaintiffs' FOIA Request and Defendant's Responses

16. Seeking to learn more about the people who will face the possibility of reincarceration as of June 10, 2023, and seeking to assess the effectiveness and administration of the CARES Act home confinement program as it comes to an end, the ACLU submitted a FOIA request to BOP on March 2, 2023. (Attached as Exhibit A.) The ACLU seeks the release of records providing information about people moved to home confinement under the authority of the CARES Act after December 25, 2021, including their sentences, the dates of their transfers to home confinement, and their projected release dates. The ACLU also seeks the release of records providing information about people whose CARES Act home confinement placement was revoked, including the reason(s) for revocation. The request made clear that it did not seek names, register numbers, or any other personal identifying information.

17. The ACLU's FOIA request sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest

---

[14] Toluse Olorunnipa and John Wagner, *Biden grants clemency to 31 drug offenders, rolls out rehabilitation plan,* Washington Post (April 28, 2023), available at https://www.washingtonpost.com/politics/2023/04/28/biden-clemency-drug-offenders-second-chance/

[15] Available at https://www.federalregister.gov/documents/2022/06/21/2022-13217/home-confinement-under-the-coronavirus-aid-relief-and-economic-security-cares-act

and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The request seeks information that will help the public understand how many people will be in jeopardy of reincarceration and the circumstances of these people's criminal cases. The request also seeks information that will help the public assess the success and administration of the CARES Act home confinement program. None of this information is currently available to the public. The ACLU did not file this request to further its commercial interest. As described above, the ACLU is a non-commercial organization, and the ACLU will make significant information it obtains from this request available to the public at no cost.

18.  Plaintiffs requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), as the COVID-19 national emergency is expected to end on May 11, 2023, and it is urgent that this information be obtained to assist public education on the status of those placed in home confinement by the CARES Act. There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

19.  BOP acknowledged receipt of Plaintiffs' request on March 6, 2023, and assigned it FOIA #2023-02156. In its response, BOP (1) denied the request for expedited processing based on insufficient information to support an urgency to inform the public, and (2) designated the matter as complex, thereby extending the time limit to respond to the request for the 10 additional days provided by statute.

20.  Plaintiffs appealed the denial of their request for expedited processing on March 17, 2023. The Office of Information Policy denied this appeal on March 21, 2023. BOP's statutory time to respond to the request has expired.

21.  No records have been produced in response to this request.

## CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552

22.  FOIA requires agencies of the federal government to "promptly" release records to the public upon request, unless a specific statutory exemption applies or disclosure is prohibited by law. 5 U.S.C. § 552(a)(3)(A). An agency must determine, within 20 working days after receipt of a request for records, whether to comply with the request and must immediately notify the requester of its determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i). In unusual circumstances, the agency has an additional 10 days to comply with the request. 5 U.S.C. § 552(a)(4)(A)(viii)(II)(aa). A requester is deemed to have exhausted its administrative remedies if the agency fails to comply with FOIA's applicable time limit provisions. 5 U.S.C. § 552(a)(6)(C)(i).

23.  A requester may seek expedited processing of a request where there is a "compelling need." 5 U.S.C. § 552(a)(6)(E).

24.  Defendant is an agency within the meaning of FOIA, 5 U.S.C. § 552(f) and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

25. Plaintiffs properly requested records within the possession, custody, and control of Defendant.

26. Defendant is wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to produce records responsive to the ACLU's FOIA request within the time specified by FOIA.

27.  Plaintiffs are therefore entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to their FOIA request and to justify the withholding of any responsive records withheld under claim of exemption.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court:

A. Declare unlawful the Defendant's failure to comply with FOIA;

B. Declare that Plaintiffs are entitled to disclosure of the requested records;

C. Declare that request #2023-02156 is entitled to expedited processing;

D. Order Defendant to immediately process Plaintiffs' request and disclose, in their entirety, unredacted versions of all records responsive to Plaintiffs' request except for any portions that are specifically exempt from disclosure under FOIA;

E. Enjoin Defendant from charging Plaintiffs search, review or duplication fees for the processing of the request;

F. Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' request;

G. Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

H. Grant such other and further relief as the Court may deem just and proper.

May 10, 2023                                    Respectfully submitted,


                                                /s/ *Arthur B. Spitzer*
                                                Arthur B. Spitzer (D.C. Bar No. 235960)
                                                American Civil Liberties Union Foundation
                                                    of the District of Columbia
                                                915 15th Street, NW – 2nd floor
                                                Washington, DC 20005
                                                (202) 601-4266
                                                aspitzer@acludc.org

                                                Emma A. Andersson[*] (CA Bar No. 260637)
                                                American Civil Liberties Union Foundation
                                                125 Broad Street – 18th floor
                                                New York, NY 10004
                                                (347) 931-6337
                                                eandersson@aclu.org


                                                Attorneys for Plaintiffs

---

[*] Motion for admission *pro hac vice* forthcoming.