**EXHIBIT A**



March 2, 2023

FOIA/PA Section
Office of General Counsel, Room 924
Federal Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534
**Email:** BOP-OGC-EFOIA-S@BOP.GOV

**National Office**
125 Broad Street,
18th Floor
New York, NY 10004
aclu.org

**Deborah N. Archer**
President

**Anthony D. Romero**
Executive Director

Re:   **Request Under Freedom of Information Act Concerning People BOP Moved to Home Confinement Under the Authority of the CARES Act**

**(Expedited Processing & Fee Waiver Requested)**

To Whom It May Concern:

The American Civil Liberties Union, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of the District of Columbia (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to the people in Bureau of Prisons (BOP) custody who BOP moved to home confinement under the authority of the CARES Act.

## I. Background

In March 2020, the CARES Act expanded BOP's authority to place incarcerated people on home confinement under 18 U.S.C. §3624(c)(2) in order to reduce the federal prison population and the spread of COVID-19. CARES Act Sec. 12003(b)(2). In January 2021, the Office of Legal Counsel published a memorandum concluding that once the COVID-19 emergency period is over, BOP must reincarcerate people who were put on home confinement under CARES and have more than the standard home confinement term left on their

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

sentences.[2] When it was reported that OLC—under President Biden—would not rescind or reconsider its decision,[3] significant public outcry ensued.[4] In September 2021, President Biden directed his administration to collect the information needed to consider granting clemency to a subset of the people who would be subject to reincarceration based on OLC's memorandum.[5] No such clemency grants occurred. However, on December 21, 2021, OLC published a new memorandum on the same issue, this time concluding that BOP is not required to reincarcerate everyone who was put on home confinement under CARES and has more than the standard home confinement term left on their sentences when the national emergency ends.[6]

It was recently reported that President Biden will end the COVID-19 national emergency declarations on May 11, 2023.[7] Thirty days after that, BOP will lose its authorization to make new CARES Act home confinement placements. And according to the 2021 OLC memorandum, BOP will have discretion to reincarcerate people who, as of June 10, 2023, have more than six months remaining on their sentence. On June 21, 2022, DOJ published a

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[2] U.S. Department of Justice, Home Confinement of Federal Prisoners After the COVID-19 Emergency (January 15, 2021), available at https://www.justice.gov/olc/file/1355886/download.

[3] *See* Charlie Savage and Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, N.Y. Times (July 19, 2021), available at https://www.nytimes.com/2021/07/19/us/politics/biden-prisoners-covid.html.

[4] *See e.g., Unless Biden intervenes, people will needlessly be sent back to prison*, Editorial Board, Washington Post (July 25, 2021) available at https://www.washingtonpost.com/opinions/2021/07/25/unless-mr-biden-intervenes-people-will-needlessly-be-sent-back-prison/; Dan King, *Biden Must Act to Ensure Nonviolent Offenders Aren't Sent Back to Prison*, The Bulwark (August 19, 2021), available at https://www.thebulwark.com/biden-must-act-to-ensure-nonviolent-offenders-arent-sent-back-to-prison/; Democracy Forward et al., *Letter to the Office of Legal Counsel and Deputy Attorney General*, (February 18, 2021), available at https://democracyforward.org/wp-content/uploads/2021/08/Letter-Seeking-Reconsideration-of-OLC-Home-Confinement-Memo-8.4.21.pdf; Kristine Phillips, *ACLU, NAACP among those pressing Biden to grant clemency to inmates sent home during COVID-19*, USA Today (July 19, 2021) available at https://www.usatoday.com/story/news/politics/2021/07/19/biden-pressed-grant-clemency-inmates-sent-home-during-covid/7980882002/

[5] Sam Stein, *Biden starts clemency process for inmates released due to Covid conditions*, Politico (September 13, 2021) available at https://www.politico.com/news/2021/09/13/biden-clemency-covid-inmates-511658

[6] U.S. Department of Justice, Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency (December 21, 2021), available at https://www.justice.gov/olc/file/1457926/download

[7] *See* Walter Pavlo, *Federal Bureau Of Prisons Set To End Home Confinement Under CARES Act*, Forbes (January 31, 2023), available at https://www.forbes.com/sites/walterpavlo/2023/01/31/federal-bureau-of-prisons-set-to-end-home-confinement-under-cares-act/?sh=240f900838af

proposed rule about how that discretion would be implemented.[8] As of the date this Request is filed, no final rule has been published.

The proposed rule indicates that the program has been very successful: "The percentage of inmates placed in home confinement under the CARES Act that have had to be returned to secure custody for any violation of the rules of home confinement is very low; the number of inmates who were returned as a result of new criminal activity is a fraction of that."[9]

The ACLU seeks information through this FOIA request so that the American public can know more about the people who will face the possibility of reincarceration as of June 10, 2023, and so that the American public can assess the effectiveness of the program as it comes to an end.

## II. Requested Records

The ACLU seeks records sufficient to show:

1) For each individual BOP has moved to home confinement under the authority of the CARES Act after December 25, 2021, the following information:

    a) Top Crime of Conviction
    b) Sentence in months
    c) Obligation Commitment date
    d) Court of Jurisdiction
    e) Home Confinement Eligibility Date absent CARES authorization
    f) Facility of BOP transfer
    g) Transfer date (specifically referred to as date of admission to home confinement)
    h) Projected release date
    i) Release date
    j) Race
    k) Ethnicity
    l) Gender
    m) Age at the time the inmate entered home confinement

2) For each individual BOP moved to home confinement under the authority of the CARES Act at any time and whose placement on home confinement was later revoked:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[8] Home Confinement Under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 87 Fed. Reg. 36,787 (June 21, 2022) available at https://www.federalregister.gov/documents/2022/06/21/2022-13217/home-confinement-under-the-coronavirus-aid-relief-and-economic-security-cares-act

[9] *Id.* at 36,795.

3

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

a) Basis for revocation (specifying, at minimum, technical violation or new alleged criminal conduct)
b) Date of the action/failure that was the basis for revocation
c) Date of return to secure custody
d) Top Crime of Conviction
e) Transfer date to home confinement (specifically referred to as date of admission to home confinement)
f) Projected release date
g) Release Date
h) Race
i) Ethnicity
j) Gender
k) Age at the time the inmate entered home confinement

The ACLU does not seek names, register numbers, or any other personal identifying information.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in an excel spreadsheet. As noted above, we seek only records sufficient to provide the specified information; we do not seek the release of all records containing the specified information.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[10] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.  *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. *See id.*[11] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that

---

[10] *See also* 28 C.F.R. s 16.5(e).

[11] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

4

"gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[12]

The ACLU regularly publishes the *ACLU* magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 900,000 people. The ACLU also publishes regular updates and alerts via email to 4.8 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 5.9 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[13]

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[12] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[13] *See, e.g.*, Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://www.aclu.org/press-releases/aclu-privacy-international-demand-government-disclose-nature-and-extent-hacking; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Demands CIA Records on Campaign Supporting Haspel Nomination (May 4, 2018), https://www.aclu.org/news/aclu-demands-cia-records-campaign-supporting-haspel-nomination; Press Release, ACLU, Advocates File FOIA Request For ICE Documents on Detention of Pregnant Women (May 3, 2018), https:// www.aclu.org/news/advocates-file-foia-request-ice-documents-detention-pregnant-women; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://www.aclu.org/news/civil-rights-organizations-demand-police-reform-documents-justice-department; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban; Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, ACLU, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, ACLU, ACLU Sues for Bureau of Prisons

and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[14]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[15] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

Documents on Approval of CIA Torture Site (Apr. 14 2016), https://www.aclu.org/news/aclu-sues-bureau-prisons-documents-approval-cia-torture-site.

[14] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press, Jan. 18, 2017, https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[15] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://www.aclu.org/ report/leaving-girls-behind; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015), https://www.aclu. org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[16]

The ACLU website includes many features on information obtained through the FOIA. The ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to

---

[16] *See, e.g., ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; *ACLU v. DOJ*—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

government policies on rendition, detention, and interrogation.[17] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[18]

The ACLU plans to analyze, publish, and disseminate to the public information gathered through this Request. The records requested are not sought for commercial use and the Requesters plan to disseminate information disclosed as a result of this Request to the public at no cost.

B. *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[19] Specifically, they pertain to how many people are at risk of being reincarcerated as of June 10, 2023. As discussed in Part I, *supra*, there has been considerable public controversy and media attention about the original 2020 OLC memorandum, the President's clemency announcement, the 2021 OLC memorandum reversing the 2020 memorandum, and the fate of thousands of people who have successfully reintegrated into society. Thus, the records sought relate to a matter of widespread and exceptional media and public interest.[20] Expedited processing is therefore appropriate under 5 U.S.C. § 552(a)(6)(E) and the Department of Justice implementing regulations.[21]

## IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[17] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[18] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/ olcmemos_2009_0305.pdf; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia 20101129/20101129Summary.pdf; *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

[19] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

[20] *See* note 4, *supra*.

[21] *See also* 28 C.F.R. § 16.5(e)(1)(ii).

8

§ 552(a)(4)(A)(iii).[22] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A. *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, this Request concerns the number of people at risk of reincarceration later this year. Little information is publicly available regarding how many people may be reincarcerated, so the records sought are certain to contribute significantly to the public's understanding of how the end of this program will affect the federal prison population. There is also a dearth of concrete information about people whose placement has been revoked—the public cannot meaningfully evaluate the successes and failures of this program without more.

The ACLU is not filing this Request to further its commercial interest. As described above, the ACLU is a noncommercial organization, and information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B. *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[23] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[24]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[22] *See also* 28 C.F.R. § 16.10(k)(2).

[23] *See also* 28 C.F.R. § 16.10(k)(2)(ii)–(iii).

[24] *See also* 28 C.F.R. § 16.10(b)(6).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

(D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[25]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[26] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[25] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[26] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver

\*       \*       \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 28 C.F.R. § 16.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Emma Andersson
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 347.931.6337
eandersson@aclu.org

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

          Sincerely,

          /s/ Emma Andersson
          Emma Andersson\*
          American Civil Liberties Union Foundation
          125 Broad Street, 18th Floor
          New York, New York 10004
          347.931.6337
          eandersson@aclu.org

          *\*admitted in California*

---

request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.